## Davis v. Davis.

*S. J. Houston*, for libellant; *G. A. Gleeson*, for respondent.

MARTIN, P. J., March 27, 1930.—Libellant and respondent were married on April 10, 1918. Three children were born, one of whom died in his first year. Two girls are still living and have resided with their mother since July, 1927.

On Sept. 12, 1928, Sadie C. Davis filed a libel, alleging cruel and barbarous treatment endangering her life, and indignities to the person which rendered her condition intolerable and life burdensome, causing her to withdraw from her husband's home and family.

A master was appointed and testimony taken on behalf of both libellant and respondent. The master found the facts and conclusions of law, and filed a report recommending that libellant be granted a divorce.

Exceptions were filed on behalf of respondent, averring that the master erred in his findings of fact and conclusions of law, and that the evidence was not sufficient to warrant a divorce.

It appears from the evidence that shortly after the libellant and respondent were married they had difficulty with regard to the christening of their first-born child, as a result of which libellant withdrew from the home of respondent's parents, where they were residing. The child became ill and was placed in the Mary J. Drexel Home for Children by its mother. Respondent, learning of this disposition of the child, without the consent of the mother or any one in authority at the Home, took the child away and kept it for some time before the mother or the hospital authorities knew where it was. After the mother learned that the father had the child, and after some altercation, she induced him to permit the child to return to the hospital; but after agreeing that the child be returned to the hospital, he struck his wife a violent blow in the face, saying: "There is a kiss for you." Shortly after the child was returned to the hospital it died; and it was asserted that the death was largely due to exposure when the child was taken from the hospital.

The libellant testified that many times when she and her husband engaged in arguments he would strike her in the face, sometimes with his open hand, but at other times causing serious injury, and that she had exhibited the

marks to a sister, Mrs. Wynne. This course of conduct continued until libellant left in 1927.

There is evidence that respondent seldom provided for his wife and children, and that it was necessary for the wife to seek employment during the greater part of the time they lived together; that she was employed by Lit Brothers, Strawbridge & Clothier, Dewees and at other places. When she was employed her husband came to the store where she was working, annoyed her by attempting to raise a disturbance, demanded money to buy his lunches, and the frequent calls upon her by the husband caused the management to discharge her. On an occasion when respondent met his wife on the street, there was an altercation, when he tripped her, tearing her dress and leaving marks on her.

Shortly after the marriage the husband was convicted of statutory rape, felonious assault, and fornication and bastardy. Respondent did not deny that he was convicted, but alleged that he was innocent; and influence was brought to bear which resulted in a suspended sentence on the rape and felonious assault charges, but he was sentenced to pay for the support and maintenance of the bastard child.

Libellant complained that respondent was too familiar with a woman named Ida Becker; that he had neglected his wife for this woman, and on several occasions told his wife he wished she would get a divorce so that he could marry Ida Becker.

Libellant claimed that the indignities to which she was subjected rendered her condition intolerable and life burdensome, and that she was compelled to withdraw from her husband's home.

Respondent admitted that he had slapped his wife on several occasions, but denied that he abused her or offered indignities to her, and asserted that, although she was employed, he had given her as much money for her support and for the support of the children as he was able to supply, as he was out of work part of the time. He denied the charge of undue familiarity with Ida Becker.

The libellant was corroborated by witnesses called in her behalf, and presented a case within the act of assembly entitling her to a divorce on the grounds of cruel and barbarous treatment and indignities offered to her person which rendered her condition intolerable and life burdensome, causing her to withdraw from her husband's house and family.

In Lynn v. Lynn (No. 1), 76 Pa. Superior Ct. 428, it was held that: "As a cause for divorce, cruel and barbarous treatment is entirely distinct from indignities to the person. A single act of cruelty may be so severe as to justify a divorce. No single indignity to the person is sufficient. Indignities need not be such as to endanger life and health; it is sufficient if they render the condition of a woman of ordinary sensibility and delicacy of feeling intolerable and her life burdensome. Where the evidence of the libellant is adequately corroborated and the testimony of the respondent is evasive, inconclusive and lacking in frankness, the Superior Court will affirm a decree of divorce which is based upon evidence of frequent assaults upon the libellant by the respondent, humiliation of the libellant in the presence of servants, relatives, physicians and others, and failure to provide her with ordinary necessities, including care in time of illness."

Counsel for respondent claims that, after the libel was filed in this case, there was a reconciliation or condonement on the part of libellant. Respondent testified that he and his wife had sexual intercourse on several occasions since the divorce proceedings were instituted. This was denied by libellant.

The master saw the libellant and respondent and had an opportunity to observe them as they gave their testimony. No substantial reason has been presented to doubt that he came to a proper conclusion as to who was telling the truth.

The fact that libellant was seen with her husband, talked with him, and gave him money on several occasions to get rid of him, does not amount to condonation of the offenses with which she charged him.

It was said in the case of Bortell *v.* Bortell, 78 Pa. Superior Ct. 201: "In an action for divorce on the grounds of cruel and barbarous treatment and indignities to the person, a reconciliation does not have the effect of a condonation in the sense of canceling the existence of facts well known to both parties. The alleged condonation is only one of many items to be considered in making the final decree."

The exceptions should be dismissed and the master's report approved.

And now, March 27, 1930, the exceptions filed on behalf of respondent are dismissed; the report of the master is approved; and it is ordered that a final rule in divorce be granted.